JIBRIL ADAMU # 87314-054
M D C BROOKLYN
80 29th STREET
BROOKLYN, NEW YORK
11232

**MEMO ENDORSED**

*The application to adjourn sentencing is denied. Defendant Adamu's Substantive points will be addressed in a separate order.*

APRIL 26, 2023

HON. PAUL G. GARDEPHE
United States District Judge
Southern District New York
United States Court House
40 Foley SQ.
NEW YORK, NY 10007

SO ORDERED:

*Paul G. Gardephe*
Paul G. Gardephe, U.S.D.J.

Dated: May 5, 2023

Re: USA V. JEAN-CLAUDE LANDJI & JIBRIL ADAMU
Case No. 18-Cr-00601-PGG

Dear Judge Gardephe,

I am one of the defendants in the above-styled cause. I am respectfully submitting the instant letter,

(1) To request leave to join in the co-defendant Landji's post-trial motions that were advanced by his former Attorney B. Alan Seidler in letters to the court dated November 15, 2022 and November 30, 2022 (DKT NOS 712 and 713, respectively),

(2) To more fully explicate and slightly expand upon the claims articulated by Mr. Seidler,

(3) To highlight and expand upon certain claims advanced in the original post-trial motions filed pursuant to Rules 29 and 33 that relate only to me and to present the court with information that it did not possess when it adjudicated those motions; and

(4) To respectfully request that the sentencing proceedings in this case continue to be held in abeyance, for at least an additional thirty (30) days, thus allowing me time to prepare and file a new streamlined and cogent Rule 33 motion that will include the claims referenced above, but that will also include a claim that trial counsel provided constitutionally ineffective assistance by failing to properly argue, prior to trial, for dismissal of the indictment based up outrageous government misconduct, including, but certainly not limited to, providing materially false testimony to the Grand Jury.

In support of the requests articulated herein, I respectfully submit the following.

PRELIMINARY STATEMENT

That the present case has involved an inordinate amount of pre-trial and post-trial litigation cannot reasonably be disputed. Indeed, the Kastigar litigation alone encompassed three days of hearings and numerous memoranda of law and several court opinions.

However, it is respectfully submitted that much of the litigation particularly with respect to the Kastiger issue -- has not been streamlined, cogent, or appropriately focused. Indeed, as to the latter, the main issues were completely overlooked and not litigated at all. For example, relevant to the Kastiger issue defense counsel argued, inter alia, that it was from information contained in the defendants' privileged documents that the Government dropped Mali and Zagreb, Croatia had been a "BLACK FLIGHT." However, the operative question should not have been how the Government determined that the flight had not been a black flight, but rather why DEA Special Agent Douglas Waters had lied to the Grand Jury in saying that the flight had been a black flight.

Another missed opportunity, from the defense's perspective, concerns the Government's April 29, 2021 revelation that, contrary to its prior position, it no longer took the position that I was a participant in three telephone calls with David Cardona - Cardona that took place in October 2018 was referenced in those calls. See DOC. 461 (Government's April 29, 2021 Letter). What the Government did not reveal, however, was the fact that Agent Waters had told the Grand Jury that I had been a participant in those telephone calls and that Mr.. Landji had been referenced in them. That fact did not come out until the Government was forced to provide the Waters Grand Jury testimony in preparation for the Kastigar hearing held on October 8, 2021. But even after the defense had received the Grand Jury testimony, they failed to move for dismissal of the indictment or even for a hearing to determine the circumstances surrounding Agent Waters' Grand Jury testimony that I had been a participant in those phone calls -- this despite the fact that the false testimony no doubt resulted in the indictment.

At all events, I respectfully request the opportunity to litigate these very important issues in the renewed Rule 33 Motion. I further request the opportunity to re-litigate the prior post-trial motions under Rules 29 and 33 with the presentment of information that was not, due to ineffective assistance of counsel, included in those post-trial pleadings.

But first, I must, perforce, address the points enumerated above.

1. Request for leave to Join Co-Defendant Landji's Post-Trial Motions

To the extent that the claims articulated by Attorney Seidler in his November 2022 letters apply to me, I request leave to join in those claims. I submit that this request is reasonable and would aid the Court in efficiently resolving the matters at issue. See e.g.., Nike, Inc. v Wu, 349 F.Supp 3d 310, 320 (S.D.N.Y. 2018).

2. The Claims in the Seidler Letters

The two letters to the Court from defendant Landji's former attorney B. Alan Seidler, dated November 15, 2022 and November 30, 2022, are not exactly the picture of clarity. Indeed, the claims advanced therein are disjointed and in some cases difficult to decipher. For example, Mr. Seidler sets out the Government's April 29, 2021 admission that I was not a participant in the October 2018 telephone calls as an objection to the presentence report ("PSR"). See November 15, 2022 letter (DKt. 712), P.5. However, as discussed above, this issue should be framed as the Government knowingly presenting false testimony to the federal Grand Jury (it should also be framed as prosecutorial misconduct in the prosecutor not revealing the fact, until after the trial had commenced, that the indictment was obtained based upon this false evidence).

Further, Mr. Seidler's assertion that the "trial court's decision to dismiss Juror #1 from the panel..., was without sufficient legal basis[,]" prompted a curious response from the Government. Indeed, in the Government's opposition to Defendant Jean-Claude Okongo Landji's Renewed Post-Trial Motions and Objections to the Pre-Sentence Investigation Report (DKt. 729), the Government proffers that "[t]hat juror...ultimately returned to the jury the following day and was not excused." Id. at 19 (footnote omitted). However, the Government's assertion is simple not true. Juror No. 1, a Ms.. Lydia Witter, did not return to the jury at all, much less the following day.

Finally regarding Mr.. Seidler's claims, Mr.. Seidler asserts that the Court erred in permitting the wife of one of the trial judge's close friends to sit on the jury.

Mr. Seidler does not explain why it was error for the Court to allow this particular juror, Ms.. Leanore Barth, to sit on the jury. However, the implication is clear that it was the relationship that the Court had with Ms.. Barth's husband that should have compelled the Court to excuse Ms. Barth, at least according to Mr. Seidler. I do not share this view. At best, perhaps the defense attorneys should have requested leave to conduct a more comprehensive personal voir dire of Ms.. Barth. That the record was not more fully developed is the fault of the defense attorneys and not the Court.

But as to the other claims--whether presented as claims or merely mentioned obliquely by Mr.. Seidler, such as the October 2018 telephone calls--I respectfully request leave to join in Mr.. Landji's motion to re-open, re-argue, and re-litigate the Rules 29 and 33 motions previously submitted.

   3. Claims Specific to Defendant Adamu

In the post-trial motions under Rules 29 and 33, I raised claims that, as a non-United States Citizen, applied only to me. Specifically, I asserted that as a non-U.S. Citizen, the United States lacked jurisdiction to charge me under 21 U.S.C. section 959(c). See DKt. 639 at 3. However, this claim was not argued properly. Indeed, rather than focusing on the purported "test flight" from Mali to Zagreb, which was conducted on a plane registered in the United States, I should have made the case that the evidence was insufficient that any other flights that I had ostensibly agreed to be involved in involved or would involve a plane registered in the United States, a condition precedent for a non-U.S. Citizen to be prosecuted under 21 U.S.C. section 959(c) for extra-territorial distribution of controlled substances (that, or the plane must be owned by a United States Citizen).

Thus, even assuming arguendo that I did in fact conspire to participate in the one Kilogram shipment of cocaine in a plane owned by a United States--a proposition that I categorically deny--there was not a shred of evidence that any planned past or future shipments were or would be conducted under these jurisdictional conditions. Indeed, the evidence indicated the exact opposite.

At all events, I respectfully request the opportunity to fully (and properly) litigate this jurisdictional issue.

   4. Abeyance Request

In closing, I respectfully request that the sentencing proceedings in this case be held in abeyance, at least for thirty (30) days, so that I may present a clear, concise, and comprehensive Rule 33 motion raising, inter alia, the issue of the October 2018 telephone calls that the Government had falsely told

the Grand Jury that I was a party to and that they referenced defendant Landji, and the issue of Agent Waters' false testimony to the Grand Jury that the flight from Mali to Zagreb had been a "black flight." Further, the proposed Rule 33 motion will also relitigate the issues that were not properly presented in the prior post-trial motions, such as the jurisdictional issue referenced above.

WHEREFORE, in light of the above I pray that this Honorable Court will grant the relief requested herein or for any additional relief the Court may deem just and appropriate.

Respectfully Submitted,

/s/Jibril Adamu
Jibril Adamu

CC: Mr. David Wikstrom
CC: Ms.. Elinor Tarlow
    (by email and ECF)